**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| ACE PROPERTY AND CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, BNSF Railway Company ("BNSF"), by its attorneys, Raymond H. Groble III, Sean M. Sullivan and William J. McFadden of Daley Mohan Groble, P.C., as and for its Complaint for Declaratory Judgment against ACE Property and Casualty Insurance Company ("ACE"), alleges as follows:

## BACKGROUND

### *Summary of Claims*

1.    On November 11, 2008, James Todd Buss ("Buss"), an employee of BNSF, filed a complaint seeking recovery under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq. ("FELA"), for personal injuries allegedly sustained during a collision that occurred while he was working as an Engineer on September 12, 2008.  That action is currently pending in the United States District Court for the Northern District of Illinois, cause no. 08 CV 6720, before the Honorable William J. Hibbler.  (A copy of the Buss complaint is attached hereto as Exhibit A). BNSF has answered the Buss complaint and has denied all material allegations of negligence stated therein.  (A copy of BNSF's answer to the Buss complaint is attached hereto as Exhibit B).

2.      The accident described in plaintiff's complaint allegedly occurred on industry tracks of a facility located at or near 1600 Industrial Drive, Mendota, Illinois, owned by Advanced Drainage Systems, Inc. ("ADS").  In this complaint, BNSF seeks: (i) a declaration that BNSF is covered with respect to the claims alleged in the Buss complaint under a certain Commercial Umbrella Liability policy issued by ACE to ADS; and (ii) such other relief as the Court determines is appropriate and warranted.

### *The Parties, Jurisdiction and Venue*

3.      BNSF is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Texas.  The location from which BNSF's officers direct, control and coordinate BNSF's activities is in the State of Texas.

4.      ACE is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located in the State of Pennsylvania.  The location from which ACE's officers direct, control and coordinate ACE's activities is located in the State of Pennsylvania.

5.      Upon information and belief, on or prior to September 12, 2008, ACE did continuous and systematic business in the State of Illinois by marketing, selling and underwriting insurance products in the State of Illinois, and by maintaining an office at 525 West Monroe Street, Suite 400, Chicago, Illinois.

6.      The matter in controversy exceeds the value or sum of $75,000.00, exclusive of interest and costs.

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because it is between citizens of different States and the matter in controversy exceeds the value or sum of $75,000.00 exclusive of interest and costs.

8.      This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(a),

because a substantial part of the events or omissions giving rise to the claim occurred in this

judicial district.  Among other things, the contract and activities for which ACE issued the

subject insurance policy were to be performed in this judicial district.

### The BNSF/ADS Industry Track Agreement

9.      On or about January 7, 2003, BNSF (at that time known as "The Burlington

Northern and Santa Fe Railway Company") and ADS entered into an Industry Track Agreement

(the "Side Track Agreement"), pursuant to which BNSF would operate over certain railroad track

on the premises of, and serving, an industrial site owned and operated by ADS in Mendota,

Illinois.  (A copy of the Industry Track Agreement is attached hereto as Exhibit C).  The accident

alleged in the Buss complaint occurred upon the referenced premises in the course of operations

undertaken pursuant to the Side Track Agreement.

10.     As set forth below, pursuant to the Side Track Agreement, ADS agreed to

indemnify and defend BNSF against certain claims and losses, and agreed to procure liability

insurance which would cover BNSF for such claims and losses.

11.     Section 10(a) of the Side Track Agreement governs ADS's indemnity obligations,

and provides, in relevant part:

> TO THE FULLEST EXTENT PERMITTED BY LAW, INDUSTRY SHALL
> RELEASE, INDEMNIFY, DEFEND AND HOLD HARMLESS RAILROAD AND
> RAILROAD'S AFFILATED COMPANIES, PARTNERS, SUCCESSORS, ASSIGNS,
> LEGAL REPRESENTATIVES, OFFICERS, DIRECTORS, SHAREHOLDERS,
> EMPLOYEES AND AGENTS (COLLECTIVELY, "INDEMNITEES") FOR, FROM
> AND AGAINST ANY AND ALL CLAIMS, LIABILITIES, FINES, PENALTIES,
> COSTS, DAMAGES, LOSSES, LIENS, CAUSES OF ACTION, SUITS, DEMANDS,
> JUDGMENTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, COURT
> COSTS, ATTORNEYS' FEES AND COSTS OF INVESTIGATION, REMOVAL AND
> REMEDIATION AND GOVERNMENTAL OVERSIGHT COSTS)
> ENVIRONMENTAL OR OTHERWISE (COLLECTIVELY "LIABILITIES") OF ANY
> NATURE, KIND OR DESCRIPTION OF ANY PERSON OR ENTITY DIRECTLY OR

INDIRECTLY ARISING OUT OF, RESULTING FROM OR RELATED TO (IN WHOLE OR IN PART):

(i)    THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, ITS ENVIRONMENTAL PROVISIONS,

(ii)   ANY RIGHTS OR INTERESTS GRANTED PURSUANT TO THIS AGREEMENT,

(iii)  INDUSTRY'S OCCUPATION AND USE OF RAILROAD'S PROPERTY OR THE USE OF AND OPERATION BY RAILROAD UPON INDUSTRY'S PROPERTY,

        *                *                *

EVEN IF SUCH LIABILITIES ARISE FROM OR ARE ATTRIBUTED TO, IN WHOLE OR IN PART, ANY NEGLIGENCE OF ANY INDEMNITEE.  THE ONLY LIABILITES WITH RESPECT TO WHICH INDUSTRY'S OBLIGATION TO INDEMNIFY THE INDEMNITEES DOES NOT APPLY ARE LIABILITES TO THE EXTENT PROXIMATELY CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF AN INDEMNITEE.

12.    Section 10(d) of the Side Track Agreement governs ADS's obligation to defend

BNSF, and provides, in relevant part:

Upon written notice from Railroad, Industry agrees to assume the defense of any lawsuit or other proceeding brought against any Indemnitee by any entity, relating to any matter covered by this Agreement for which Industry has an obligation to assume liability for and/or save and hold harmless any Indemnitee.  Industry shall pay all costs incident to such defense, including, but not limited to, attorneys' fees, investigators' fees, litigation and appeal expenses, settlement payments, and amounts paid in satisfaction of judgment.

13.    ADS is therefore obligated under the Side Track Agreement to indemnify and

defend BNSF for all claims of any kind and nature arising out of the agreement or out of BNSF's

rail operations on the ADS property, regardless of whether such claims arise from or are

attributed to BNSF's sole negligence.

14.    Section 11 of the Side Track Agreement governs ADS's obligation to procure

insurance covering BNSF and provides, in relevant part:

Industry shall, at its sole cost and expense, procure and maintain during the life of this Agreement (except as otherwise stated in subsection D below) the following insurance coverage:

(a)      Commercial General Liability insurance.  This insurance shall contain broad form contractual liability with a combined single limit of a minimum of $2,000,000 each occurrence and an aggregate limit of at least $4,000,000.  Coverage must be purchased on a post 1998 ISO occurrence or equivalent and include coverage for, but not limited to, the following:

-        Bodily Injury and Property Damage
-        Personal Injury and Advertising Injury
-        Fire legal liability
-        Products and completed operations.

This policy shall also contain the following endorsements, which shall be indicated on the certificate of insurance:

-        It is agreed that any workers' compensation exclusion does not apply to Railroad payments related to the Federal Employers Liability Act or a Railroad Wage Continuation Program or similar programs and any payments made are deemed not to be either payments made or obligations assumed under any Workers Compensation, disability benefits, or unemployment compensation law or similar law.

                    *                    *                    *

No other endorsements limiting coverage may be included on the policy with regard to the work being performed under this agreement.

15.      Section 11 of the Side Track Agreement further provides:

All policy(ies) required above (excluding Workers Compensation and if applicable, Railroad Protective) shall include a severability of interest endorsement and shall name Railroad and Staubach Global Services – RR, Inc. as an additional insured with respect to work performed under this agreement.  Severability of interest and naming Railroad and Staubach Global Services – RR, Inc. as additional insured shall be indicated on the certificate of insurance.

16.      ADS is therefore obligated under the Side Track Agreement to procure

Commercial General Liability insurance with a per occurrence limit of liability of not less than

$2,000,000; to ensure that BNSF is named as an additional insured under such insurance; and to

ensure that such insurance contains no exclusions for claims arising out of BNSF's negligence or arising out of the Federal Employers Liability Act.

### *The Travelers Primary CGL Policy*

17.     Upon information and belief, for the period of April 1, 2008 through April 1, 2009, ADS procured Commercial General Liability policy number TC2JGLSA-281K728A issued by Travelers Property Casualty Company of America ("Travelers") (the "Travelers Primary Policy").

18.     Upon information and belief, the Travelers Primary Policy has a limit of $1,000,000 per occurrence.

19.     Upon information and belief, the Travelers Primary Policy contains the following additional insured endorsement:

**ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Name of Person or organization:

Any person or entity with whom you have agreed in a written contract, executed prior to loss to name as an additional insured, but only for the limits agreed to in such contract or the limits of insurance of this policy, whichever is less.

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured <u>but only with respect to liability arising out of your acts or omissions</u>.  (emphasis added).

20.     Upon information and belief, the Travelers Primary Policy provides coverage for liability assumed by ADS in an "insured contract."  Section V (9) of the Travelers Primary Policy defines "insured contract" as:

      b.      A sidetrack agreement;

      f.      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

### *The ACE Umbrella Policy*

21.    For the period of April 1, 2008 through April 1, 2009, ADS procured Commercial Umbrella Liability policy number G23864034, issued by ACE (the "ACE Umbrella Policy").  (A copy of the ACE Umbrella Policy is attached hereto as Exhibit D).

22.    The ACE Umbrella Policy has a limit of $25,000,000 per occurrence.

23.    The ACE Umbrella Policy provides coverage for liability assumed by ADS in an "insured contract."  Article V of the ACE Umbrella Policy contains exclusions from coverage and provides, in relevant part:

This insurance does not apply to:

               *                   *   `          *

C.    Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  <u>This exclusion does not apply to liability for damages</u> :

      1.      That the "insured" would have in the absence of the contract or agreement; or

      2.      <u>Assumed in a contract or agreement that is an "insured contract,"</u> provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage," provided:

a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and

b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(emphasis added).

24. Section VII (J) of the ACE Umbrella Policy defines "insured contract" as:

[T]hat part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

### BNSF's Tender and Demand for Indemnity to ADS

25. By letter dated September 28, 2009, BNSF provided written notice to ADS of the Buss complaint, tendered the defense to ADS, and demanded that ADS indemnify, defend and hold harmless BNSF in accordance with ADS' contractual obligations under the Side Track Agreement. (A copy of the September 28, 2009 letter is attached hereto as Exhibit E).

26. To date, ADS has not acknowledged or fulfilled its obligation to indemnify or defend BNSF, except to the limited extent of coverage under the Travelers Primary Policy as described below.

### Travelers' Partial Acceptance of Tender under the Travelers Primary Policy

27. By letter dated November 9, 2009, Travelers denied BNSF's tender of defense and demand for indemnity on certain grounds, but accepted the tender on a limited basis on other grounds. Specifically:

(a) Travelers asserted that BNSF was not entitled to coverage as an additional insured because the additional insured endorsement limited such coverage to "liability arising out of [ADS'] acts or omissions."

(b)    Travelers asserted that even if BNSF qualified as an additional insured, coverage would be excluded under the workers compensation and employers' liability exclusions.

(c)    Travelers acknowledged that the Side Track Agreement was an "insured contract" under the Travelers Primary Policy, and that BNSF was entitled to defense and indemnity on that basis.

(d)    Travelers asserted that coverage was limited to the $1,000,000 policy amount.

(e)    Travelers asserted that attorneys' fees and costs of defense are deemed damages for personal injury, and therefore operate to reduce the coverage limits under the policy.

28.    Subject to the foregoing limitations, Travelers has accepted BNSF's tender of defense under the "insured contract" provisions of the Travelers Primary Policy.  (A copy of the November 9, 2009 letter is attached hereto as Exhibit F).

29.    Plaintiff Buss's settlement demand in the underlying lawsuit is significantly greater than $1,000,000.

### *ACE Response to Tender and Demand for Indemnity*

30.    By letter dated November 3, 2009, ACE acknowledged receipt of correspondence concerning BNSF's tender of defense and demand for indemnity regarding the underlying action. ACE advised BNSF that it was evaluating the submission, and generally reserved its rights under the applicable policy.  (A copy of the November 3, 2009 letter is attached hereto as Exhibit G).

31.    To date, ACE has not accepted or denied the tender and demand for indemnity under the ACE Umbrella Policy.

### COUNT I

### (ACE – Declaratory Judgment)

32.    BNSF repeats and incorporates paragraphs 1 through 31 as and for paragraph 32.

33.     By reason of the foregoing facts, the Side Track Agreement is an "insured contract" under the terms of the ACE Umbrella Policy.

34.     BNSF is entitled to defense and indemnity under the ACE Umbrella Policy for all fees, costs, liability, judgments, settlements and payments incurred in or arising out of the Buss complaint, to the extent not paid by Travelers under the Travelers Primary Policy.

35.     Notwithstanding the foregoing, and in breach of its obligations under the ACE Umbrella Policy, ACE has to date failed and refused to accept BNSF's tender of defense and demand for indemnity under the ACE Umbrella Policy.

36.     By reason of the foregoing, an actual controversy exists as to ACE's obligation to defend and indemnify BNSF in the underlying action, and as to the parties' respective rights and obligations under the ACE Umbrella Policy.  The controversy is ongoing because the underlying action is ongoing.

WHEREFORE, BNSF prays for entry of a judgment finding and declaring that:

(i)     the ACE Umbrella Policy affords coverage for BNSF in the underlying action;

(ii)     ACE is obligated to pay any judgment entered against BNSF in the underlying action, to the extent not paid by Travelers under the Travelers Primary Policy, and/or to reimburse BNSF for any and all such judgments paid by BNSF;

(iii)     ACE is obligated to pay any settlement entered by BNSF in the underlying action, to the extent not paid by Travelers under the Travelers Primary Policy, and/or to reimburse BNSF for any and all such settlements paid by BNSF;

(iii)     ACE is obligated to reimburse BNSF for all attorneys' fees and costs of defense incurred in defending the underlying action, to the extent not paid by Travelers under the Travelers Primary Policy; and

(iv)    ACE has breached the ACE Umbrella Policy by virtue of the facts alleged herein.

BNSF further requests the Court to enter an award of all costs and fees incurred by BNSF in bringing this declaratory judgment action, and for such other and additional relief as the Court deems appropriate.

## **JURY DEMAND**

BNSF hereby demands a trial by jury of all claims so triable.


BNSF RAILWAY COMPANY


By:    /s/    Sean M. Sullivan
                Sean M. Sullivan
                One of Its Attorneys

Raymond H. Groble III (Atty No. 6194291)
Sean M. Sullivan (Atty No. 6191677)
William J. McFadden (Atty No. 6276661)
DALEY MOHAN GROBLE, P.C.
55 West Monroe, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-9999
Facsimile:  (312) 422-5370